LAMY, Judge.
Plaintiff filed suit against the defendant for the payment of accidental death benefits allegedly owed under an auto insurance policy containing such a provision. Plaintiff later moved for summary judgment alleging that there were no genuine issues of material fact as to coverage under the insurance policy and, thus, she was entitled to payment in accordance with the policy. Defendant, in opposition to the motion, alleged that the plaintiff had previously dropped accidental death coverage for the deceased and attempted to offer certain extrinsic and parol evidence in support of its allegations. Subject to the plaintiffs objection, the trial court did not allow the defendant’s evidence and granted the motion for summary judgment. The defendant appealed the judgment, and for the following reasons we reverse -and remand.
Factual and Procedural Background
The plaintiff, Ms. Trida Sieferman, and Mr. Parris Decuir were divorced on September 9, 1994. During their marriage the plaintiff maintained an auto insurance policy with State Farm Mutual Automobile Insurance Company, which included a provision for the coverage of death, dismemberment, or loss of sight of the named insured. The provision entitled the named insured to be paid ten thousand dollars if death or injury resulted from an accidental motor vehicle accident. The policy also allowed double indemnity in the event the person killed was wearing a seatbelt. The declaration page of the policy listed “Sief-erman & Parris” as the named insureds under the death provision.
It is undisputed that in December of 1996, Mr. Decuir was killed in a single-car auto accident while wearing his seatbelt. On December 9, 1997, Ms. Sieferman filed suit against State Farm for the twenty thousand dollars allegedly owed under the death provision of the insurance policy. State Farm answered the petition denying that it was obligated to pay the plaintiff, affirmatively denying that the insurance l2policy provided death coverage for Mr. Decuir at the time of his death. State Farm alleged that the plaintiff had contacted a State Farm agent on August 2, 1994, and requested that Mr. Decuir be dropped from all coverages under her policy and, thereafter, was charged no premium for such coverage.
On April 28,1998, State Farm moved for summary judgment asserting there were no genuine issues of material fact as to coverage because the plaintiff had can-celled the coverage for Mr. Decuir approximately two-and-a-half years prior to his death. State Farm presented an affidavit from David Naranjo, a State Farm underwriting/operation superintendent, which stated that after review of the plaintiffs insurance policy file, he determined that coverage for Parris Decuir had been dropped on August 2, 1994, and that State Farm did not provide death benefit coverage for Parris Decuir on the date of his death. Attached to this affidavit was a document titled “Echo Policy Transaction” which allegedly indicates that a change in *551 death benefit coverage was made so as to delete the insured, “Parris,” on August 2, 1994. State Farm also produced an affidavit from Carroll Boudreaux, the plaintiffs insurance agent, who stated that Ms. Sief-erman contacted his office on August 2, 1994, and requested that Parris Decuir be dropped from the policy and that she was not charged a premium for the coverage of Parris Decuir after that date. Attached to her memorandum in opposition to State Farm’s motion, the plaintiff filed a sworn affidavit stating that she contacted Carroll Boudreaux sometime in 1994 informing him that she had been divorced and that the policy should be changed to reflect her maiden name. She further stated that she told Boudreaux that both she and Mr. Decuir would be responsible for their own premiums. However, she maintained in the affidavit that she was continuously charged and paid premiums for the death benefit coverage for Mr. Decuir.
| sWhile the motion for summary judgment was pending, the plaintiff filed a motion to compel discovery from State Farm due to alleged attempts to receive answers to certain written interrogatories and to obtain responses to a request for production of documents pertaining to the State Farm policy file for Ms. Sieferman and Mr. Decuir. The two motions were joined and heard on June 26, 1998. After hearing the arguments of both parties, the trial court granted the plaintiffs motion to compel and dismissed the motion for summary judgment, stating that there still remained genuine issues of material fact regarding the coverage of Mr. Decuir.
On September 3,1998, State Farm again moved for summary judgment alleging this time that the plaintiff, as Mr. Decuir’s ex-spouse, is not entitled to payment under the terms of the policy. The plaintiff responded by filing another motion to compel and order for contempt against State Farm for failing to sufficiently respond to the discovery request as required by the previous trial court order. The plaintiff further requested that sanctions be rendered under La.Civ.Code art. 1471(3), in the form of a default judgment against State Farm. The two motions were joined and heard on October 23, 1998. ■ The trial court again found there to be genuine issues of material fact as to the policy coverage and denied the motion for summary judgment. The trial court further found State Farm in contempt and ordered it to pay two hundred and fifty dollars in attorney’s fees. Although State Farm argued that it had produced all of the evidence pertaining to this matter, the trial ordered it to produce the discovery requested within five days from the date judgment was rendered or a default judgment would be entered in the plaintiffs favor.
Alleging that State Farm had again failed to “completely and fully” respond to the discovery request, the plaintiff moved for a default judgment. On March 26, 1999, the parties presented their arguments regarding the default judgment to the trial | ¿court. At the hearing, the plaintiff argued that State Farm had continuously failed to produce a declaration page containing the coverage and premiums charged for the date Mr. Decuir was killed. Although several declaration pages from August of 1994 to December 1997 were produced, there was not a specific declaration page for the six-month period from November 1996 to May 1997. State Farm alleged that no declaration sheet existed for that time period and that the declaration page dated May 20, 1996 to November 11, 1996, evidenced the coverage that was in effect at the time of Mr. Decuir’s death. State Farm produced an affidavit from David Naranjo in support of this contention. The trial court determined that a default judgment was not the proper sanction given the facts of this case and denied the plaintiffs motion. The trial court did rule, however, that the declaration page dated May 20, 1996, showing death coverage for Mr. Decuir in the amount of ten thousand dollars with a double indemnity for seatbelt use, was in effect on the date of his death, December *552 22, 1996. Moreover, the trial court ruled that State Farm was precluded from arguing that any other declaration sheet was in effect for that time period.
The plaintiff then filed the motion for summary judgment alleging that the policy and declaration sheet proved death benefit coverage for Mr. Deeuir and that as a named insured, the plaintiff was entitled to the proceeds. State Farm opposed the motion for summary judgment setting forth the affidavit of Carroll Boudreaux and the two affidavits of David Naranjo that were previously filed with its own motions for summary judgment. State Farm continuously alleged that the plaintiff had cancelled the death coverage for Mr. Deeuir and had not paid a premium for that coverage after August 2, 1994. State Farm also attached to one of the Naranjo affidavits the computer generated document titled “Echo Policy Transaction” which [^allegedly indicates that a coverage change was made to the policy in question on August 2,1994.
At the hearing on the motion for summary judgment, the plaintiff argued that State Farm’s affidavits were parol evidence which could not be considered by the trial court to alter the terms of the written insurance contract. The trial court ultimately agreed that the affidavits were inadmissible parol evidence and awarded the plaintiffs summary judgment. It is from this judgment that State Farm appeals.
Discussion of the Merits
In its sole assignment of error, State Farm alleges that the trial court erroneously granted the plaintiffs motion for summary judgment. State Farm argues that the trial court erred in failing to consider the affidavits presented in support of its opposition to the summary judgment as well as finding that the plaintiff was an insured entitled to payment under the insurance terms of the policy.
An appellate court reviews summary judgments de novo, determining from the record whether there are any genuine issues of material fact and whether the mover-appellant is entitled to judgment as a matter of law. Magnon v. Collins, 98-2822 (La.7/7/99); 739 So.2d 191; Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94); 639 So.2d 730. Prior to making a determination as to whether a genuine issue of material fact exists in this matter, we are first confronted with a question of law. The question presented by State Farm is whether the trial court was precluded from considering the affidavits filed by State Farm because they are parol evidence. The trial court in its written reasons for judgment states, and the plaintiff argues in brief, that the recent supreme court decision, Peterson v. Schimek, 98-1712 (La.3/2/99); 729 So.2d 1024, is controlling in this matter and stands for the proposition that the trial court is precluded from considering parol evidence to alter the terms of an | ¿insurance contract which is clear and unambiguous. In our view, the jurisprudence cited by the trial court does not bar consideration of the evidence presented by State Farm in the instant matter.
The supreme court in Peterson thoroughly set forth the law regarding interpretation of an insurance contract. The supreme court observed that an insurance policy is a conventional obligation which constitutes the law between the parties and governs the nature of the relationship between them. Id. Accordingly, those courts called to interpret insurance policies are guided by principles of interpretation of contracts as set forth in the Louisiana Civil Code. See La.Civ.Code art. 2045 et seq. Addressing the issue that is the most relevant to the instant matter, the supreme court has stated:
The interpretation of contracts is well established in our jurisprudence, which our courts have steadfastly maintained. Parol[] evidence cannot be introduced when the provisions of an insurance contract are clear and explicit, and.lead to no absurd consequences; courts must *553 enforce the contract as written. LA. CIV.CODE art.2046. Furthermore, courts are prohibited from taking parol evidence to explain or contradict the insurance contract’s clear meaning. LA. CIV .CODE art. 1848.
Peterson, 98-1712, p. 10; 729 So.2d at 1032 (footnote omitted).
In the instant matter, we find the affidavits in question are not offered to alter the terms and conditions of the insurance contract rather, State Farm has offered the testimony to present a genuine issue of material fact as to whether the death coverage for Mr. Decuir was in effect at the time of the accident. This court has previously held that, “[a]lthough parol evidence may not be introduced to vary the actual terms or provisions of a policy, evidence may be introduced to determine whether a policy is in force .” Isaac v. Patterson Ins. Co., 97-608, p. 7 (La.App. 3 Cir. 10/8/97); 702 So.2d 918, 922 (quoting Alford v. Woods, 614 So.2d 1299 (La.App. 3 Cir.), writ denied, 617 So.2d 915 (La.1993)), writ denied, 97-2806 (La.1/30/98); 709 So.2d 709. See also Money v. Bennett, 97-840 (La.App. 4 Cir. 11/19/97); 703 So.2d 152; Rockhold v. Dep’t of Trans. & Dev., 528 So.2d 749 (La.App. 4 Cir.), writ denied, 533 So.2d 21 (La.1988). Thus, we conclude that the consideration of the affidavits in this matter would not be inappo-site to the reasoning of Peterson since they are not offered to assist in the interpretation of certain terms and conditions of the insurance policy. Rather, the affidavits relate to whether or not the death provision of the policy was in force as to Mr. Decuir at the time of his death. We conclude the trial court erred in failing to consider the affidavits in its ruling on the motion for summary judgment.
We note the trial court’s statement in its written reasons that had it been able to consider State Farm’s affidavits there would be genuine issues of material fact in this matter and summary judgment would not be appropriate. We agree. Whether an insurance policy provision has been can-celled or whether an insured has paid her premiums are questions of fact left to be determined by the trial court. Nerness v. Christian Fidelity Life Ins. Co., 98-1827 (La.App. 3 Cir. 4/21/99); 733 So.2d 146. In light of our findings as to the admissibility of State Farm’s affidavits, we reverse the trial court’s granting of the summary judgment and remand this matter for further proceedings.
The plaintiff further asserts that the affidavits and “Echo Policy Transaction” are inadmissible because the trial court previously precluded the introduction of such evidence in its imposition of sanctions against State Farm for discovery violations. The plaintiff argued in brief and at oral argument that the trial court ruled at the March 26, 1999, hearing on the plaintiffs motion to compel and default judgment, that according to the declaration sheet sworn to bé in effect at the time of Mr. Deeuir’s death, the insurance policy showed coverage for Mr. Decuir and that State Farm was precluded from introducing any further evidence pertaining to the issue of | «coverage. However, we find the plaintiffs argument to be without merit. The transcript of the March 26 hearing reflects the following colloquy:
BY THE COURT:
.... So the order of the court for the sanctions for failure to comply with discovery is that the State Farm will be precluded from introducing any evidence other than that which is already submitted in response to the motion to compel, which is Mr. Naranjo’s affidavit and this policy.
BY MS. VILLEMARETTE [Attorney for State Farm]:
Correct, Your Honor, All the dec pages—-everything that’s in the record, basically, Your Honor.
BY THE COURT:
Right.
A written judgment denying the plaintiffs motion for default was signed April 9, 1999. In the trial court’s written reasons *554 for granting the plaintiffs motion for summary judgment, it reiterated its previous order by stating:
No declaration sheet for the time period covering the December 22, 1996 death was ever produced by State Farm, and, indeed, State Farm was precluded from doing so based on the Court’s earlier ruling.
The trial court went on to exclude the affidavits and “Echo Policy Transaction” due to the parol evidence objection entered by the plaintiff. After review of the record, we do not find that the evidence in question was excluded by the imposition of sanctions upon State Farm and find the plaintiffs assertion to be without merit.
Due to the reasons stated above, we do not reach State Farm’s second argument that the trial court erred by ruling that there are no genuine issues of material fact as to whether Ms. Sieferman is the proper party to recover the death benefits according to the terms of the insurance policy.
^DECREE
For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings. All costs of this appeal are assigned to the plaintiff, Tricia Siefer-man.
REVERSED AND REMANDED.