796 So.2d 833 (2001)
Tricia SIEFERMAN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 01-0439.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*834 Bennett Boyd Anderson, Jr., Anderson & Broussard, Lafayette, LA, Counsel for Plaintiff/Appellee: Tricia Sieferman.
Preston D. Cloyd, Cloyd, Wimberly & Villermarette, L.L.C., Lafayette, LA, Counsel for Defendant/Appellant: State Farm Mutual Automobile Insurance Company.
Court composed of ULYSSES GENE THIBODEAUX, SYLVIA R. COOKS and JOHN D. SAUNDERS, Judges.
THIBODEAUX, Judge.
The defendant, State Farm Mutual Automobile Insurance Company, appeals the trial court's judgment awarding the plaintiff, Tricia Sieferman, a $20,000.00 death benefit payment on an automobile insurance *835 policy covering Ms. Sieferman's ex-husband, Parris DeCuir.
We affirm.

I.

ISSUES
We shall consider the following issues:
1. whether the trial court erred in holding that the policy covered Parris DeCuir and in awarding the plaintiff $20,000.00 plus legal interest and court costs;
2. whether the trial court erred in sanctioning State Farm for alleged discovery violations by prohibiting State Farm from introducing evidence that had not already been submitted into the record; and,
3. whether the trial court erred in ruling that the evidence submitted by State Farm at trial was inadmissible because of the sanctions imposed for alleged discovery violations.

II.

FACTS
Tricia Sieferman and Parris DeCuir were divorced on September 9, 1994. During their marriage, Ms. Sieferman maintained an auto insurance policy with State Farm, which included a provision for the coverage of death, dismemberment, or loss of sight of the named insured. The provision entitled the named insured to be paid ten thousand dollars if death or injury resulted from a motor vehicle accident. The policy also allowed double indemnity in the event the person killed was wearing a seatbelt.
It is undisputed that in December of 1996, Mr. DeCuir was killed in a single-car auto accident while wearing a seatbelt. On December 9, 1997, Ms. Sieferman filed suit against State Farm for the twenty thousand dollars allegedly owed under the death provision of the insurance policy. The declaration page of the policy that was in effect at the time of the accident listed "Sieferman & Parris" as the named insureds under the death provision. However, State Farm denied that it was obligated to pay Ms. Sieferman and denied that the insurance policy provided death coverage for Mr. DeCuir at the time of his death. State Farm alleged that Ms. Sieferman had contacted her State Farm agent on August 2, 1994, and requested that Mr. DeCuir be dropped from all coverages under her policy and, thereafter, State Farm charged no premium for such coverage.
Prior to trial, Ms. Sieferman filed three discovery motions, which resulted in a finding of contempt and discovery sanctions against State Farm for violating the trial court's order compelling production of State Farm documents. Following the discovery sanctions, Ms. Sieferman moved for summary judgment on all issues. In opposition to the motion for summary judgment, State Farm submitted affidavits from its claims supervisor, David Naranjo, and from Ms. Sieferman's agent, Carroll Boudreaux. State Farm also submitted a computer-generated document labeled "Echo Policy Transaction" to prove that Mr. DeCuir's coverage had been deleted from the policy. The trial court granted summary judgment in favor of Ms. Sieferman, holding that the affidavits and document submitted by State Farm were inadmissible parol evidence that could not be used to alter the unambiguous terms of the insurance policy. State Farm suspensively appealed the summary judgment. This Court reversed the summary judgment and remanded the matter to the trial court, holding that the affidavits and document were admissible to present a genuine issue of material fact as to whether the *836 death coverage for Mr. DeCuir was in effect at the time of the accident. Sieferman v. State Farm Mutual Automobile Ins. Co., 00-91 (La.App. 3 Cir. 5/3/00); 760 So.2d 549.
Following remand, a bench trial on the merits was held. Although State Farm's evidence was admissible under the parol evidence rule, the trial judge held that the discovery sanctions against State Farm precluded the introduction of any evidence except Mr. Naranjo's affidavit and the insurance policy. The trial judge found Ms. Sieferman to be credible and believable but found that State Farm's evidence was ambiguous, lacked credibility, and lacked corroborative testimony. Consequently, the trial judge held that the policy provided a death benefit payment of $20,000.00 covering the life of Mr. DeCuir and that Ms. Sieferman, as the spouse and named insured under the policy, was the person entitled to receive the death benefit payment. State Farm now appeals the trial court's judgment.

III.

LAW AND DISCUSSION

Coverage and Payment of Benefits
State Farm argues that Mr. DeCuir was not covered by the death provision of the automobile policy. Whether Mr. DeCuir was covered by the policy under the circumstances of this case is a question of fact. The appellate standard of reviewing questions of fact is manifest error, and a trial court judgment should not be reversed unless it is clearly wrong. Powell v. Regional Transit Auth., 96-0715 (La.6/18/97); 695 So.2d 1326. There is a reasonable factual basis for the trial court's conclusion that Mr. DeCuir was covered by the policy.
State Farm argues that Ms. Sieferman asked her insurance agent, Mr. Boudreaux, to drop Mr. DeCuir from all coverages on August 2, 1994, eight days before she filed for divorce. State Farm further argues that Mr. DeCuir and Ms. Sieferman maintained two separate auto insurance policies after their divorce, and Ms. Sieferman did not pay any premiums for Mr. DeCuir's death coverage after August 2, 1994.
Ms. Sieferman testified that she contacted Mr. Boudreaux in August of 1994, not to drop Mr. DeCuir from all coverages, but to delete the name "DeCuir" from her last name because the policy listed her as "Tricia Sieferman-DeCuir." The trial judge found Ms. Sieferman's testimony credible, believable, and corroborated by the State Farm declaration sheets, which specify the coverage provided and which included both Ms. Sieferman and Mr. DeCuir.
Mr. Naranjo, the claims supervisor, testified that each time there is a change in coverage a new declaration sheet is produced. Mr. Naranjo further testified that Mr. DeCuir's death coverage was dropped on August 2, 1994, and State Farm produced a declaration sheet to reflect this change in coverage. The court noted, however, that State Farm also produced declaration sheets for Ms. Sieferman's policy every six months, even when there was no change in coverage.
State Farm relied on the declaration sheets to prove that, after August 2, 1994, Ms. Sieferman paid a premium of $2.38 every six months, which only paid one person's death coverage. Mr. Naranjo testified that, prior to August 2, 1994, Ms. Sieferman's death coverage premium should have been approximately $5.00 every six months, providing coverage to Ms. Sieferman and Mr. DeCuir. However, Mr. Naranjo could not locate and failed to produce declaration sheets for the time before the alleged August 2, 1994 change in coverage. He also failed to produce *837 declaration sheets from November 11, 1994 until November 11, 1995. Without the declaration sheets, the trial judge was unable to compare the premiums paid by Ms. Sieferman before and after Mr. DeCuir's death coverage was allegedly dropped.
In his affidavit, Mr. Naranjo stated that policy number 611-6732-E11-18D (18D) was in effect from May 20, 1996 until August 18, 1997. The declaration sheet for policy 18D lists "Sieferman & Parris" as the insured persons under the death coverage provision. Mr. Naranjo testified that, based on his review of Ms. Sieferman's file, State Farm intended to delete Mr. DeCuir from the policy on August 2, 1994. However, the name "Parris" remained on the declaration sheets after August 2, 1994 because of a data entry error. State Farm attempted to introduce the "Echo Policy Transaction," which was allegedly sent by Mr. Boudreaux to State Farm's home office, to prove State Farm's intent to delete Mr. DeCuir's death coverage. Mr. Naranjo failed to produce any additional documents showing that Ms. Sieferman requested that Mr. DeCuir's coverage be deleted. Without additional documentation, the trial court found the "Echo Transaction Policy" ambiguous and unreliable.
Further, an insurance policy is a contract that is subject to the general rules of contract interpretation. Glass Services Unlimited v. Modular Quarters, Inc., 478 So.2d 1005 (La.App. 3 Cir.1985). Clear and unambiguous terms of an insurance policy must be construed as written, while ambiguous terms of a policy are construed against the insurer. Id. at 1007. The declaration page of the policy 18D, which was effective on the date of the accident, clearly listed "Sieferman and Parris" under the death coverage provision. Although the name "DeCuir" is not listed on policy 18D, this ambiguity must be construed in favor of Ms. Sieferman. The trial judge held that Mr. DeCuir was covered by the policy at the time of his death in December of 1996, and we find that the trial court's resolution of this factual issue was reasonable.
State Farm further argues that Ms. Sieferman is not the proper person to whom the death benefit should be paid. This is a question of law regarding the interpretation of the auto insurance policy. The appellate standard of reviewing a question of law is "`simply a decision as to whether the lower court's decision is legally correct or incorrect.'" Huddleston v. Farmers Merchants Bank & Trust Co., 2000-640, p. 2 (La.App. 3 Cir.11/14/00); 772 So.2d 356, 358 (quoting Phoenix Assurance Co. v. Shell Oil Co., 611 So.2d 709 (La.App. 4 Cir.1992)).
The death coverage provision of the insurance policy provides that State Farm will pay any amount due for death, dismemberment or loss of sight: (1) to the insured; (2) to the parent or guardian if the insured is a minor or an incompetent person; (3) to the surviving spouse; or (4) at its option, to any person or organization authorized by law to receive such payment. The trial judge held that Ms. Sieferman could recover under the policy because she is both a named insured and the surviving spouse of Mr. DeCuir. We do not agree that Ms. Sieferman is entitled to receive the death benefits as an insured. We, however, do agree that Ms. Sieferman is the proper person to whom the death benefit should be paid because she was Mr. DeCuir's surviving spouse at the time of the policy's issuance and a person authorized by law to receive the payment.
The policy states that State Farm will pay the insured for death or loss caused by an accident in which the insured *838 is occupying or struck by a motor vehicle or trailer. Mr. DeCuir was the insured party involved in the accident, and these policy terms indicate that he was the insured party entitled to recover for a loss. Although she is a named insured, Ms. Sieferman is not the insured party who was occupying or struck by a motor vehicle and cannot recover as the insured.
Conversely, Ms. Sieferman can recover as Mr. DeCuir's surviving spouse. The insurance policy defines spouse as "your husband or wife who is living with you." State Farm argues that Ms. Sieferman cannot be a surviving spouse under the policy because Mr. DeCuir was not living with Ms. Sieferman at the time of the accident. To prove that Ms. Sieferman is not a surviving spouse, State Farm relies on Robertson v. Aetna Cas. & Sur. Ins. Co., 629 So.2d 445 (La.App. 3 Cir.1993), which denied coverage to an insured's exspouse under a homeowner's policy. We find Robertson inapplicable. In Robertson, the court concluded that a divorced exspouse could not be considered a "relative" within the meaning of an insurance policy which defined an "insured" to include a resident of a household who was a "relative." There was neither a blood nor a marital relationship to the named insured.
Some guidance benefitting Ms. Sieferman is provided by American Health & Life Ins. Co. v. Binford, 511 So.2d 1250 (La.App. 2 Cir.1987), which involved a claim by a named beneficiary who was the ex-wife of the deceased insured. In Binford, the life insurance policy listed the beneficiary's full name, and in the space provided for the relationship of the beneficiary to the insured, the word "wife" was written. Id. at 1252. The court reasoned that, although the insured and the named beneficiary divorced before the insured's death, the description of the beneficiary as wife was merely a showing of a relationship in existence at the time the insurance contract was executed. Id. at 1254. The court stated that the termination of the marital relationship had no automatic effect on the provisions of the insurance policy. Id. Noting that there was no evidence of an intent to make anyone else the beneficiary of the policy, the court held that the insured's ex-wife was the sole beneficiary. Id.
This case is similar to Binford. Although Ms. Sieferman divorced Mr. DeCuir, she was Mr. DeCuir's spouse at the critical time, when the policy was executed in May of 1990. State Farm does not possess any signed documentation of Ms. Sieferman's alleged subsequent request to change her policy. Ms. Sieferman's divorce from Mr. DeCuir had no automatic effect on the provisions of the auto insurance policy, particularly in the absence of evidence showing the parties' intent to make someone other than Ms. Sieferman the beneficiary. Further, Ms. Sieferman is a person authorized by law to receive the death benefit payment because she purchased the insurance policy and paid the premiums. Therefore, Ms. Sieferman is the proper person to whom the death benefit should be paid.

Discovery Sanctions
State Farm argues that the trial court erred in imposing sanctions and in prohibiting the introduction of evidence that had not already been submitted into the record. Article 1471 of the Louisiana Code of Civil Procedure provides that if a party fails to obey a court order, the court may make such orders that are just, including prohibiting the disobedient party from introducing designated matters into evidence. During discovery, the trial court ordered State Farm to produce any documents concerning Ms. Sieferman's policy and the calculation of Ms. Sieferman's premium. State Farm did not comply *839 with the court's order and failed to produce the insurance application and several declaration sheets, including the declaration sheet showing coverage for the date of Mr. DeCuir's accident. The trial court held State Farm in contempt and ultimately sanctioned State Farm, precluding the introduction of any additional evidence that was not already submitted into the record. The trial court's imposition of a sanction was reasonable and was not an abuse of the wide discretion granted the trial court by article 1471.
State Farm argues that it did not produce certain documents concerning premium calculation because those documents were filed with the State of Louisiana and are a public record. State Farm also argues that it provided Ms. Sieferman with every document that existed at the time of the discovery requests. After the discovery requests, State Farm generated and printed documents concerning the calculation of Ms. Sieferman's premium, which State Farm knew was an issue in this case and, at trial, State Farm sought to introduce documents produced just one day earlier. The trial court noted that if the documents could have been printed the day before trial, they could have been printed at the time of the discovery requests. During discovery, the court ordered State Farm to produce any documents related to Ms. Sieferman's policy and premium. State Farm knew that calculation of premiums was an issue in this case, and it failed to generate and produce the documents regarding premium calculation during discovery but attempted to violate the court's order by generating these documents for trial. The sanction was appropriate and the evidence sought to be introduced by State Farm was properly excluded.
Even if the sanction was inappropriate and the evidence should have been considered, the trial court still did not err in finding that the policy covered Mr. DeCuir and in awarding the death benefits to Ms. Sieferman. Although the additional evidence that State Farm sought to introduce was inadmissible, the trial court allowed State Farm to submit the evidence to the court. The trial court reviewed the evidence and found that none of the inadmissible evidence supported State Farm's contention that Ms. Sieferman requested a change in her insurance coverage. In spite of the additional evidence submitted, the trial court found that Ms. Sieferman's testimony was reliable and credible and was corroborated by State Farm documents. We agree. The trial judge was eminently correct.

IV.

CONCLUSION
Accordingly, the trial court's judgment is affirmed. All costs are assessed against the defendant-appellant, State Farm Mutual Automobile Insurance Company.
AFFIRMED.